UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Bobby S.W.,[1] | Case No. 24-cv-3047 (DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Leland Dudek, *Acting Commissioner of Social Security*, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Bobby S.W. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") ("Decision"). Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) This matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Decision.

## BACKGROUND

**I.   Plaintiff's Claim**

Plaintiff applied for DIB on October 12, 2021 (*see* Soc. Sec. Admin. R. ("R.") 351)[2] and applied for SSI on October 28, 2021 (R. 370). At that time, he was 45 years old (R. 370), with a

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

[2] The Social Security administrative record ("R.") is filed at ECF No. 9. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

1

general educational development ("GED") degree (R. 408) and previous work experience as a cook, industrial cleaner, mailroom clerk, hotel housekeeper, and desk clerk (R. 41-43, 420-26). Plaintiff alleged a disability onset date of July 15, 2020 (R. 365, 370), resulting from bipolar, obsessive-compulsive disorder ("OCD"), attention deficit disorder ("ADD"), a back problem, an ankle problem (Achilles tendon), obesity, and depression (R. 407).

## II.   Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).[3] In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must establish at step two that he has a severe, medically determinable impairment

---

[3] The provisions of Title II (DIB) duplicate the provisions of Title XVI (SSI) of the Social Security Act. For simplicity, the Court cites only to the statutory provisions and regulations under Title XVI.

2

or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III.  Procedural History

The Commissioner denied Plaintiff's application for DIB and SSI initially (R. 228, 232) and on reconsideration (R. 238, 241). On November 6, 2023, at Plaintiff's request (R. 154), an Administration Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 37-54). An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified. (*Id.*) The ALJ issued his Decision on November 29, 2023. (R. 13-26.)

The ALJ determined at step one of the sequential analysis that, although Plaintiff had worked since his alleged disability onset date, this work did not qualify as substantial gainful

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

3

activity. (R. 15.) At step two, the ALJ found Plaintiff had the following severe impairments: bipolar disorder, depressive disorder, morbid obesity, marijuana use disorder, and degenerative disc disease of the lumbar spine. (*Id.*) The ALJ also found Plaintiff had oppositional defiance disorder but deemed it a non-severe impairment. (R. 16.) At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 16-18.)

The ALJ then determined Plaintiff's RFC. He found that:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand and/or walk 4 hours in an 8-hour workday. The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps or stairs but never climb ropes, ladders, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can understand simple, nonproduction rate pace jobs with frequent interaction with the public, coworkers, and supervisors. The claimant can have occasional changes to work procedure and requirements.

(R. 18-19.)

In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record, Plaintiff's medical testing, examination and treatment history, his testimony regarding his symptoms, his employment history, and his activities of daily living. (R. 19-24.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work as: a mailroom clerk (classified as light, unskilled, and SVP 2[5]); a hotel housekeeper (classified as light, unskilled, and SVP 2); a laborer (classified as heavy,

---

[5] "SVP" refers to the "specific vocational preparation" for a given occupation. Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 00-4p.

unskilled, and SVP 2); a cook (classified as medium, skilled, and SVP 6); and a desk clerk (classified as light, semi-skilled, and SVP 4). (R. 24.) The ALJ then determined that Plaintiff can perform his past work as a mailroom clerk as actually and generally performed. (*Id.*) Relying on the VE's testimony, the ALJ also made an alternative finding at step five that, considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: storage facility rental clerk (DOT 295.367-026, with around 80,000 jobs in the national economy); parking lot cashier (DOT 211.462-010, with around 50,000 jobs in the national economy); and credit clerk (DOT 237.367-014, with around 35,000 jobs in the national economy). (R. 24-26.) Based on these findings, the ALJ concluded Plaintiff was not disabled. (R. 26.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), and this lawsuit followed.

## DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1.) the ALJ failed to properly consider the effects of Plaintiff's class III obesity at steps three and four of the sequential analysis; and (2.) the ALJ erroneously failed to provide a valid rationale for rejecting Plaintiff's testimony concerning his self-reported symptoms. (*See* ECF No. 15 at 1, 5-6, 12.) Plaintiff contends the ALJ's decision was unsupported by substantial evidence and based on an inadequate review of the medical evidence presented. (*Id.*)

**I.     Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. The ALJ's Step Three and Step Four Analysis

### A. Step Three – The Listing of Impairments

Plaintiff challenges the ALJ's determination at step three that Plaintiff's morbid obesity, alone or in combination with other severe impairments, did not meet the criteria of any of the

6

impairments in the Listing.  (ECF No. 15 at 5-8.)  Plaintiff specifically contends the ALJ should have discussed how Plaintiff's obesity affected his analysis of Listing 1.15.  (*Id.*)

In concluding Plaintiff's impairments did not meet the criteria of Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), the ALJ stated, among other findings, that there was no medical documentation showing: (1.) a medical need for an ambulatory assistance device; (2.) an "inability to use one upper extremity to independently initiate, sustain, a complete work-related activity involving fine and gross movements, and a medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand"; or (3.) "an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements."  (R.16.)  In light of these findings, the ALJ determined that Plaintiff's impairments do not satisfy Listing 1.15 because "an impairment that manifests only some of the criteria, no matter how severely, does not qualify." (*Id.*)

B.     Step Four – Plaintiff's RFC

Plaintiff further contends the ALJ improperly failed to consider the impact of his obesity on his mental and physical functional limitations in determining Plaintiff's RFC at step four.  (ECF No. 15 at 5-6, 8-11.)  Plaintiff specifically asserts the ALJ failed to properly address the impact of his obesity in combination with other impairments, including lower back pain and depression, on his functional limitations, including his:  mobility, ability to lift, ability to reach, ability to interact with others in the workplace; and ability to perform jobs involving detailed tasks.  (*Id.*)

Upon carefully reviewing Plaintiff's testimony, medical records, treatment history, examination records, activities of daily living, and the opinions of Plaintiff's treating medical

providers and the state agency medical consultants, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." But the ALJ also determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record … ." (R. 19-20.)

In reaching this conclusion, the ALJ pointed to several medical reports that stated Plaintiff's physical capabilities were not seriously compromised by his impairments. Plaintiff had a normal gait and motor coordination in May 2021. (R. 846.) After Plaintiff injured his back while loading pallets in November 2021, a physician conducted a physical evaluation and reviewed x-rays of Plaintiff's back. (R. 20, 902, 904.) The doctor observed that Plaintiff experienced some pain maneuvering his back but also had: (1.) full and pain-free flexion of his lumbar; (2.) full strength in his lower extremities; (3.) light touch sensation bilaterally in the dermatomes of his lower limbs; (4.) a negative straight leg test; (5.) a non-antalgic gait; and (6.) full and pain-free range of motion of his bilateral hip. (R. 20, 902, 904.) X-rays showed "minimal degenerative changes." (R. 20, 904.) The physician noted that Plaintiff "does not endorse or demonstrate any low back pain red flag signs/symptoms. Neurological exam is reassuring today." (*Id.*) The ALJ also cited a note written by an emergency department nurse to Plaintiff's employer stating Plaintiff could return to work as soon as he was cleared by a primary care provider. (R. 20, 939.) The ALJ cited the absence of any functional limitations or restrictions as evidence that Plaintiff's impairments did not compromise his ability to work. A physical therapist also evaluated Plaintiff in November 2021 and reported Plaintiff did not require assistance with activities of daily living. (R. 21, 959.)

The ALJ further considered the opinions of several medical providers who evaluated Plaintiff's physical health.  Jay Wedel, P.A., a consultative examiner, examined Plaintiff on February 18, 2023.  He concluded that Plaintiff:  could only walk, sit or stand "occasionally" in an 8-hour workday; could only lift and carry 5-10 pounds occasionally on his left side; could lift and carry 20 pounds frequently on his right side; and had moderate limitations associated with bipolar disorder, obsessive compulsive disorder; and attention deficit disorder.  (R. 21, 1386.)  But the ALJ found Mr. Wedel's opinion unpersuasive insofar as it was inconsistent with the overall medical record.  (R. 21.)  The ALJ noted that Mr. Wedel imposed a 5-10 pound "occasional" lift and carry limitation on the left side, though Mr. Wedel's own examination showed Plaintiff's motor strength was 5/5 in both the upper and lower extremities.  (*Id*.; R. 1385-86.)  Mr. Wedel's examination additionally showed that: Plaintiff's gait and stance were normal; his grip strength was 5/5 bilaterally; and he had no difficulty with fine and gross manipulative skills.  (R. 21; R. 1385.)  Though Mr. Wedel found Plaintiff had reduced range of motion of the lumbar region, Plaintiff had normal range of motion in the cervical spine, his sensation was intact, and his elbows, wrists, hands, knees, hips, and ankles were all normal.  (R. 21; R. 1385.)  Mr. Wedel specifically wrote in his impressions, "Obesity No limitation."  (R. 1386.)

The ALJ also considered the opinions of two state agency reviewing physicians, Scott Spoor, M.D. and Randal Reid, M.D.  They both concluded that Plaintiff could perform work at the light exertional level with some additional limitations, despite his obesity, past medical history, and evidence of nerve root impingement in Plaintiff's back.  (R. 23, 183-84, 194-95.)  The ALJ found both opinions to be "generally persuasive as they were consistent with and supported by the overall medical record and the objective examinations/radiographic data."  (R. 23.)  The ALJ explicitly noted that, though Plaintiff "has a history of generative disc disease and obesity," his

9

"examinations have consistently shown [his] motor strength was 5/5 in the upper and lower extremities," his gait, stance and grip strength were normal, and the objective medical record otherwise showed minimal to no impacts to his physical capabilities resulting from these conditions, aside from reduced range of motion in the lumbar spine. (*Id.*)

The ALJ also reviewed medical reports and opinions concerning Plaintiff's mental health. The ALJ noted that Plaintiff presented to an emergency department on May 7, 2021 due to "bizarre behavior." (R. 22, 827.) But after hospitalization and prescribed medication, Plaintiff appeared to stabilize and present no evidence of functional loss. (R. 22, 911.) Subsequent medical examinations over the years showed Plaintiff's symptoms remained stable. (R. 22, 1391, 1395, 1408.) The ALJ considered the medical opinions of two state agency consultants, Virginia J. Bell-Pringle, Ph.D. and Jill Blacharsch, M.D., and found them to be "generally persuasive". (R. 22-23.) The ALJ agreed with the findings of both consultants that Plaintiff: could understand, remember and carryout simple instructions; could make simple decisions; could interact adequately with others; and could respond appropriately to changes in work settings. (R. 22-23.) But the ALJ objected to Dr. Bell-Pringle's findings that Plaintiff could only attend and concentrate for two hours at a time and that he may miss one day of work every month due to psychiatric symptoms. (R. 22.) The ALJ cited a lack of support in the record for either finding, and further noted that prior examinations showed Plaintiff's psychiatric symptoms were stable with medication. (*Id.*)

The ALJ concluded by stating "no treating or examining physician has opined that the claimant cannot work" and "examinations did not reflect any evidence of functional loss." (R. 23-24.) In light of the "paucity of evidence" to support it, the ALJ "considered but granted little probative weight" to Plaintiff's "allegation of disabling pain and limitation." (R. 24.)

### III. Analysis

#### A. Plaintiff's Obesity

##### 1. Step Three Analysis

Plaintiff argues the ALJ's Decision at step three is flawed because it is "silent on how Plaintiff's obesity affected the analysis of Listing 1.15" and ignores evidence related to Listing 1.15. (ECF No. 15 at 6.) The Social Security Administration has determined that "[o]besity is not a listed impairment; however, the functional limitations caused by the [medically determinable impairment] of obesity, alone or in combination with another impairment(s), may medically equal a listing." SSR 19-2P, 2019 WL 2374244 (May 20, 2019). But Plaintiff fails to show how he satisfies *all* the criteria of Listing 1.15. For a claimant's obesity (alone or in combination with other impairments) to medically equal Listing 1.15, "he must present medical findings equal in severity to *all* the criteria." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Moreover, it is a plaintiff's burden to prove that his unlisted impairments meet all the criteria of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Listing 1.15 has four sets of criteria: 1.15A, 1.15B, 1.15C, and 1.15D. *See* 20 C.F.R. Part 404, Subpart P, App. 1. Criterion 1.15D requires:

> Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
> 1. A documented medical need … for a walker, bilateral canes, or bilateral crutches … or a wheeled and seated mobility device involving the use of both hands …; or
> 2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements …, and a documented medical need … for a one-handed, hand-held assistive device … that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand …; or
> 3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements ….

11

*Id.*

Plaintiff has not met his burden. He argues evidence in the record shows that his severe impairments match the medical equivalence of criterion 1.15D. (*See* ECF No. 18 at 3.) In support of this contention, he points to testimony that he has a walker he uses only when both his calves are hurting. (R. 49.) But Plaintiff does not point to any evidence that shows the walker was medically prescribed, and he did not specify how often both his calves hurt. Plaintiff essentially asks the Court to conclude that his severe impairments match the severity of criterion 1.15D because he occasionally uses an unprescribed walker. This is plainly not enough to satisfy the "very high standard" for proving a Listing-level impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011); *see also Moss v. Berryhill*, No. 4:18-CV-189 (NCC), 2019 WL 1275070, at *9 (E.D. Mo. Mar. 20, 2019) (finding plaintiff's voluntary use of walker did not establish an extreme inability to ambulate as required by Listing 1.02 and 1.00). Since Plaintiff failed to prove that his severe impairments are medically equivalent to criterion 1.15D, he has not met his burden to prove that his obesity satisfies all the criteria of Listing 1.15. For these reasons, has not shown that the ALJ's step three analysis was legally erroneous.

### 2. Step Four Analysis

Plaintiff also argues the ALJ's determination of his RFC is flawed because the ALJ failed to take his obesity into account. (ECF No. 15 at 10.) The Court is not persuaded. The ALJ stated multiple times that he found Plaintiff's obesity to be a severe impairment, but that objective medical evidence did not show Plaintiff's obesity or his other severe impairments were so limiting as to render him disabled. (*See* R. 20, "In regard to the claimant's alleged … morbid obesity …, the objective medical evidence of record confirmed the conditions but not the disabling nature. Specifically, in May 2021, he had a normal gait and motor coordination, with no evidence of

abnormal movements or tremors;" *id.*, noting that an October 2021 exam showed nonspecific back pain likely related to obesity, but a follow-up exam in November showed no back pain or functional loss; R. 23, noting Plaintiff's history of degenerative disc disease and obesity but finding his objective medical examinations have consistently failed to establish significant functional limitations resulting from these impairments.) In support of his findings, the ALJ cited to multiple medical reports and opinions that showed Plaintiff did not experience disabling physical or psychological losses while suffering from obesity. (R. 20-23, 183-84, 194-95, 846, 901-05, 911, 939, 959.) In *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004), the Eighth Circuit held that the ALJ adequately considered the plaintiff's obesity because the ALJ "referred to [plaintiff's] obesity in evaluating the claim" and the record as a whole supported the ALJ's decision. Here, the ALJ conducted a more in-depth analysis, discussing Plaintiff's obesity multiple times and citing to specific record evidence to support his conclusion that his obesity was not severe enough to be disabling. *See also Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009) ("[W]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal."); *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (finding ALJ adequately considered plaintiff's obesity because ALJ explicitly stated that he considered obesity's effects when combined with other impairments); *Daehler v. Comm'r Soc. Sec.*, No. 16-CV-1037 (KEM), 2018 WL 4512174, *9-10 (N.D. Iowa June 6, 2018) (finding ALJ adequately considered obesity because ALJ noted plaintiff's obesity and state agency physicians opined plaintiff could perform light work despite obesity).

Plaintiff points to various parts of the record he believes contradict the ALJ's analysis and conclusion concerning his functional abilities. (*See* ECF No. 15 at 8-10; ECF No. 18 at 3-4.) But this Court must defer heavily to the ALJ's findings, *see Hurd v. Astrue*, 621 F.3d 734, 738 (8th

13

Cir. 2010) (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)), and the existence of evidence that contradicts the ALJ's conclusions is not enough to overcome that deference, *see Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). Plaintiff must instead show that the no reasonable person would find enough evidence in the record to adequately support the ALJ's Decision. *See Hurd*, 621 F.3d at 738. The ALJ cited to more than enough evidence to support his RFC determination and conclusion that Plaintiff's obesity did not compromise his ability to "perform basic work activities." (R. 24.) The Court therefore will not disturb the ALJ's findings.

### B. Plaintiff's Self-Reported Symptoms

Finally, Plaintiff argues the ALJ failed to provide a valid explanation for dismissing Plaintiff's testimony regarding his symptoms. (ECF No. 15 at 12.) The Court disagrees with Plaintiff's characterization of the ALJ's analysis. The ALJ did not dismiss his symptoms; the ALJ found Plaintiff's severe impairments "could reasonably be expected to cause [his] alleged symptoms." (R. 19.) The ALJ determined, however, that the alleged *severity* of those symptoms was not entirely consistent with the evidence in the record. (R. 19-20.) The ALJ's conclusion was not baseless. For example, Plaintiff testified he could only lift approximately five pounds. (R. 49.) Yet, both state agency reviewing physicians opined he could frequently lift ten pounds and occasionally lift twenty pounds (R. 182, 194), and a consultative examiner found Plaintiff had full motor strength in his upper and lower extremities with the ability to frequently lift twenty pounds on his right side and up to ten pounds on his left (R. 1385-86).

Plaintiff lists several pieces of evidence he believes show objective physical and psychological deficits, and he asserts the ALJ failed to "specifically explain how these significant objective findings are inconsistent with Plaintiff's testimony." (*Id.* at 13-14.) But "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th

Cir. 1998). Moreover, the Court must limit its review to whether substantial evidence in the record supports the ALJ's Decision; not whether substantial evidence in the record supports a contrary decision. *See Koch v. Kajakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (quoting *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). For the reasons previously discussed, the ALJ's Decision was well-supported. The existence of some evidence that could support a contrary result is not dispositive.

Plaintiff also asserts the ALJ relied exclusively on the lack of substantiating medical evidence to reject Plaintiff's symptom testimony, which is impermissible. (*Id.* at 14.) An ALJ may not dismiss a claimant's testimony regarding his subjective complaints solely because it was inconsistent with objective medical evidence. *See* SSR 16-3p, 2017 WL 5180304, at *7; *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (quoting *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003)). Instead, he must consider several factors when determining a claimant's credibility, including: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The ALJ need not explicitly discuss each factor, however." *Moore*, 572 F.3d at 524. "ALJs may discount claimants' complaints if there are inconsistencies in the record as a whole, and [courts] 'will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)).

The record as a whole is inconsistent with Plaintiff's subjective complaints, and the ALJ explicitly considered more than just the absence of objective medical evidence when he "granted

15

little probative weight to [Plaintiff's] testimony." (R. 24.) For example, the ALJ highlighted medical progress notes from November 2021 stating Plaintiff did not require assistance with activities of daily living. (R. 21, 959.) The progress notes further show that the treating physician was able to completely resolve Plaintiff's back pain and limited range of motion with Osteopathic Manipulative Treatment ("OMT"). (R. 908.) No medication was prescribed, and he was referred to a physical therapist for strengthening exercises. (*Id.*) But, as the ALJ noted, Plaintiff only went to the physical therapist once and was dropped as a patient for failing to attend subsequent appointments. (R. 21, 965.) These reports suggest Plaintiff's symptoms after his alleged disability onset date have not been as serious as his testimony suggests. OMT appeared to be a highly effective treatment that addressed both Plaintiff's pain and his functional abilities. *See Moore*, 572 F.3d at 524-25 (concluding evidence of effective pain treatments undermined plaintiff's allegations of disabling pain). And Plaintiff's failure to follow through with prescribed physical therapy suggests he did not perceive his symptoms as sufficiently disabling to require further treatment. *See Goff*, 421 F.3d at 793 (concluding failure to follow pain treatment was relevant to credibility determination). Because the ALJ identified multiple good reasons for discounting Plaintiff's testimony, the Court defers to the ALJ's credibility determination. *See Wildman*, 596 F.3d at 968; *see also Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").

Plaintiff disagrees with the ALJ's weighing of the evidence, but he has not shown the ALJ's conclusions are legally erroneous. The Court accordingly affirms the Decision.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Request for Relief (ECF No. 14) is **DENIED**;

2. The Commissioner's Request for Relief (ECF No. 17) is **GRANTED**;

3. The Decision is **AFFRIMED**; and

4. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 25, 2025                           *s/ Dulce J. Foster*
                                                   Dulce J. Foster
                                                   United States Magistrate Judge